```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
THOMPSON OKUMA,

                Plaintiff,

    -v.-                                    14 Civ. 239 (DAB)
                                            MEMORANDUM AND ORDER
CROTONA PARK WEST HOUSING
DEVELOPMENT FUND CORP., et al,

                Defendants.
-------------------------------X
```

**DEBORAH A. BATTS, United States District Judge.**

Plaintiff Thompson Okuma ("Okuma" or "Plaintiff") brings this wrongful termination action against Crotona Park West Housing Development Fund Corporation, Phipps Houses, Phipps Houses Services, Inc., Phipps Community Development Corporation, and Fulton Jefferson Associates, L.P. (collectively "Crotona Parks" or "Defendants"). For the reasons stated below, Plaintiff's Motion to Remand is DENIED, Defendants' Motion to Compel Arbitration is GRANTED, and this matter is DISMISSED.

I. BACKGROUND

Defendants are for profit and not-for-profit corporations, organized under the laws of New York, who conduct business in Bronx County, New York. (Compl. ¶¶ 1-6, 11-20.) Plaintiff Okuma, a resident of Bronx County, New York, began to work for Defendants' as a porter in 2001. (Compl. ¶¶ 8, 10, 21.) During

1

the course of his employment, Plaintiff cleaned and otherwise maintained Defendants' properties, including Defendants' property at 1639 Fulton Avenue, New York, NY (the "Property"). (Compl. ¶¶ 22, 28.)

On February 13, 2013, Plaintiff fell down the stairs at the Property and sprained his right ankle severely. (Compl. ¶¶ 31-32, 35-36.)  The next day, Okuma met with Joseph Osborne, Defendants' senior property manager, who told Plaintiff that he would continue to receive pay, but with sick days and short-term disability funds, until he could return to work. (Compl. ¶¶ 42, 45.)  Around February 22, 2013, Plaintiff spoke with Mr. Osborne again, who, this time, informed Plaintiff that he was fired. (Compl. ¶¶ 54-57, 59.)  On February 24, 2013, Mr. Osborne called Plaintiff, and asked him to meet on the next day to discuss re-employment. (Compl. ¶ 61.)  When Mr. Okuma said that he could not meet on that day, and requested an alternate date, Mr. Osborne refused and hung up the telephone. (Compl. ¶ 61-63.)  Mr. Osborne, on behalf of Defendants, formally terminated Plaintiff's employment in a letter dated February 25, 2013. (Compl. ¶ 64.) According to the letter, Plaintiff was terminated for his failure to meet with Defendants on February 25, 2013, as previously agreed. (Compl. ¶ 64.)

From 2001 until he was terminated in February 2013, Plaintiff was a member of the Service Employees International

Union Local 32BJ (the "Union"), which represented the building workers at the Property. (Compl. ¶¶ 30, 72-80; Munsky Decl., Ex. A, at 1.)  The Union, Crotona Park West, and Fulton Jefferson c/o Phipps House Services were parties to a collective bargaining agreement ("CBA"), effective March 15, 2011 through March 14, 2015, which set out the terms of Plaintiff's employment. (Compl. ¶¶ 30, 72-80; Munsky Decl., Ex. A.)  The CBA's terms establish employee grievance procedures, including mandatory arbitration, for claims of discrimination. (Munsky Decl., Ex. A, Art. 1, 18.)  In addition, the CBA provides terms and conditions relating to sick days, dismissal, severance pay, and vacation time. (Munsky Decl., Ex. A, Art. 1, 3-4, 10, 14.)  For example, Article 3 of the CBA states that each employee has ten days of sick leave, and Article 4 states that "[n]o employee shall be discharged or have his/her work duties suspended or terminated, without good and just cause." (Munsky Decl., Ex. A, Art. 3-4.)  Okuma has not filed a grievance pursuant to the CBA. (Pl.'s Opp'n Mem. Law at 6.)  He claims that he attempted to reach a union representative when he was terminated, but the representative was on medical leave and, therefore, unavailable. (Id.)

Plaintiff now alleges that Defendants discriminated against him on the basis of his (1) disability, in violation of New York State Human Rights Law ("NYSHRL"); (2) disability, in violation of New York City Human Rights Law ("NYCHRL"); (3) age, in

3

violation of NYSHRL; and (4) age, in violation of NYCHRL. (Compl. ¶¶ 81-100.)  Plaintiff also alleges that (5) Defendants failed to pay him wages, bonus, vacation pay, severance pay, and other undefined benefits in violation of New York State Labor Law § 198(1-a). (Compl. ¶¶ 101-103.)  Plaintiff commenced this action in New York State Supreme Court, County of Bronx on October 4, 2013. (See Compl.)  On January 13, 2014, Defendants filed a timely Notice of Removal in the United States District Court for the Southern District of New York. (ECF No. 1.)  Defendants now move the Court to compel arbitration pursuant to the CBA, (ECF No. 4), and Plaintiff, to remand the action back to the state court. (ECF No. 11.)

II. DISCUSSION

   A. Legal Standard for a Motion to Remand

"The party seeking removal of an action from state to federal court bears the burden of proving federal jurisdiction." In re Refco, Inc. Securities Litig., No. 02 Civ. 3288, 628 F. Supp. 2d 432, 437 (S.D.N.Y. 2008)(citing In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 2790, at *18 (S.D.N.Y. March 3, 2003)).  "Absent diversity of citizenship, federal-question jurisdiction is required." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); see also 28 U.S.C. § 1441(b); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003).

4

In general, the presence of federal question jurisdiction is governed by the well-pleaded complaint rule, which "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, Inc., 482 U.S. at 392.  However, the United States Supreme Court has recognized a corollary to the well-pleaded complaint rule, which applies when Congress has so completely preempted a particular area that "any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); see also Domnister v. Exclusive Ambulette, Inc., 607 F.3d 84, 89, n. 2 (2d Cir. 2009).  The Supreme Court has held that state law claims are completely preempted if the claims arise under Section 301 of the Labor Management Relations Act ("LMRA"). See Beneficial Nat'l Bank, 539 U.S. at 8 (citing 29 U.S.C. § 185)("[W]here this Court has found complete pre-emption . . . under the LMRA . . . the federal statute[ ] at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action."); see also Domnister, 607 F.3d at 89, n. 2.

Section 301 of the LMRA explains that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . .

5

may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, Inc., 482 U.S. at 394 (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859, n. 3 (1987)). The Second Circuit has held that a claim is substantially dependent on a collective bargaining agreement when it involves interpretation of the agreement. See Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001)(quoting Foy v. Pratt & Whitney Group, 127 F.3d 229, 234 (2d Cir. 1997)(quotation marks omitted))("[D]etermining plaintiff's claim would require reference to the CBA, but . . . such reference was not in itself interpretation warranting preemption."). While "[i]t is true that claims are not preempted by § 301 if they only require that the CBA be 'consulted' for damages calculation rather than be 'interpreted' to resolve the dispute," Salamea v. Macy's East, Inc., 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006)(citing Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)), a union member's claims for vacation pay and severance pay trigger complete preemption because such claims require the court to interpret the underlying collective bargaining agreement. Salamea, 426 F. Supp. 2d 149 (holding that the employee's New York labor law claims for negligent termination

6

and unpaid vacation time were preempted by § 301 because they required interpretation of the underlying collective bargaining agreement); Monumental Blunders, Inc. v. CBS Corp., No. 00 Civ. 220, 2000 U.S. Dist. LEXIS 8323 (S.D.N.Y. June 15, 2000)(holding that plaintiff's severance pay claim was preempted by § 301 because it required interpretation of the collective bargaining agreement).

When complete preemption applies, 28 U.S.C. § 1441(b) authorizes removal of any claim that "arises under" federal law. See Beneficial Nat'l Bank, 539 U.S. at 8; Caterpillar, Inc., 482 U.S. at 392-93. Moreover, where there is a proper basis for removal for at least one claim, the Court has supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

B. Analysis for the Motion to Remand

Plaintiff argues that this Court lacks subject matter jurisdiction and must remand the action back to state court. (Pl.'s Mem. Law at 4.)  As the parties seeking to remove the action from state to federal court, Defendants bear the burden of demonstrating that the case is properly in federal court. In re

Refco, Inc. Sec. Litig., 628 F. Supp. 2d at 437 (citing In re WorldCom, Inc. Sec. Litig., 2003 U.S. Dist. LEXIS 2790, at *18).

Parties make no claim that this action should be before the Court based on diversity jurisdiction; all parties are citizens of New York. (See Compl. ¶¶ 1-6, 8, 10-20.)  However, Defendants argue that federal jurisdiction exists because Plaintiff's fifth cause of action, Defendants' alleged failure to pay Plaintiff wages, bonus, vacation pay, severance and other benefits, is preempted by § 301 of the LMRA. (Compl. ¶¶ 101-103; Defs.' Opp'n. Mem. Law at 3, 5.)  Okuma, in response, argues that "the CBA does not provide Plaintiff with substantive rights," (Pl.'s Mem. Law at 7-8), and that the Complaint references the CBA only to provide "all pertinent facts." (Id. at 7.)  He further suggests that state law provides an independent basis for his rights, the CBA is merely "consulted," and his claim is not preempted under the LMRA. E.g., Salamea, 426 F. Supp. 2d at 155.  The Court disagrees with Plaintiff.

Plaintiff asserts that "state claims stand alone without federal law or the CBA," (Pl.'s Mem. Law at 7), but fails to provide any support, in law or fact, for this position.  In fact, the Complaint cites the CBA explicitly in five paragraphs, which describe Plaintiff's rights to sick days, severance pay, and vacation days. (Compl. ¶¶ 72-73, 75, 77, 79; Defs.' Opp'n. Mem.

8

Law at 4.)  Okuma's claims are "substantially dependent on analysis" of the CBA, because the CBA created the rights on which his claims rely. Caterpillar, Inc., 482 U.S. at 394; see, e.g., Munsky Decl., Ex. A, Art. 3 ("Each employee shall be allowed ten (10) days sick leave within each calendar year after one full year of service"); Munsky Decl., Ex. A, Art. 4 ("In the event of the termination or lay off (sic) . . . the Employer shall pay a severance or layoff pay . . . . Employees who voluntarily quit or are discharged for just cause shall not be entitled to severance pay.")

Furthermore, the Court has found previously that when resolution of a state labor law dispute requires interpretation of a collective bargaining agreement, that claim is preempted by § 301 of the LMRA and, thus, provides a basis for removal to federal court. See Salamea, 426 F. Supp. 2d at 155.  Here, Parties dispute whether Plaintiff is entitled to, inter alia, unused vacation days and unpaid wages, as well as severance and bonus payments —- matters central to the issue of damages.  The resolution of these disputes doubtlessly require the Court to interpret the CBA.  Therefore, the LMRA completely preempts Plaintiff's fifth cause of action, and establishes this Court's jurisdiction over the claim. Metro. Life, 481 U.S. at 63-64; Domnister, 607 F.3d at 89, n.2.  Here, removal is proper.

Plaintiff's four remaining discrimination claims arise out of the same work-related injury that resulted in Plaintiff's work absence.  Hence, they "derive from a common nucleus of operative fact . . . such that [the Plaintiff] would ordinarily be expected to try them all in one proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  As such, the Court may retain supplemental jurisdiction over the remaining claims.  The Motion to Remand to the action state court is hereby DENIED.

C. Legal Standard for a Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"),[1] "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2.  This Circuit acknowledges the "expression of a strong federal

---

[1] The Court notes that "[t]he [Federal] Arbitration Act does not apply to 'contracts of employment of . . . workers engaged in foreign or interstate commerce,' 9 U. S. C. § 1, but the federal courts have often looked to the [Federal Arbitration] Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act, 1947 . . . empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 41 n. 9 (U.S. 1987); Red Apple Supermarkets/ Supermarkets Acquisitions v. Local 338 RWDSU, No. 98 Cv. 2303, 1999 U.S. Dist. LEXIS 12199 (S.D.N.Y. Aug. 9, 1999)("[S]ection 301 of the Labor Management Relations Act empowers district courts to set aside arbitration awards, and federal courts generally look to the F.A.A. for guidance in such cases.").  As such, the legal standard above is apt. See also Johnson v. Tishman Speyer Props., L.P., No. 09 Civ. 1959, 2009 U.S. Dist. LEXIS 96464 (S.D.N.Y. Oct. 16, 2009); Garcia v. Frank, No. 09 Cv. 4599, 2010 U.S. Dist. LEXIS 142619 (S.D.N.Y. July 28, 2010).

policy favoring arbitration as an alternative means of dispute resolution." <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 171 (2d Cir. 2004)(citation omitted).  Consequently, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 91 (2000).

When deciding a motion to compel arbitration, the Court must analyze four factors: "(1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration." <u>Rodriguez v. Four Seasons Hotels, Ltd.</u>, No. 09 Civ. 2864, 2009 U.S. Dist. LEXIS 59683, at *3 (S.D.N.Y. July 10, 2009)(citing <u>JLM Indus., Inc</u>, 387 F.3d at 169).  This Circuit has held that "[c]ollective bargaining agreements are contracts entailing transactions in commerce," and therefore such agreements "fall[] within the purview of the Act." <u>Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.</u>, 107 F.3d 979, 982 (2d Cir. 1997).

**D.  Analysis for the Motion to Compel Arbitration**

Defendants move this Court to compel Parties to participate in mandatary arbitration.  Parties do not dispute the existence of an arbitration clause in the CBA.  Nor do they dispute that the Union, "as the sole and exclusive bargaining representative for all employees," agreed to the CBA and the "mutual promises, covenants and provisions" contained therein. (Munsky Decl., Ex. A, Art. 1.)  The critical issue here is whether the CBA requires that Plaintiff's claims be submitted through the grievance and arbitration procedures set out in Article 18 of the CBA. (Munsky Decl., Ex. A, Art. 18.)  The arbitration clause of the CBA states:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations.  <u>All such claims shall be subject to the grievance and arbitration procedure as sole and exclusive remedy for violations</u>.

(Munsky Decl. at ¶ 3, Ex. B, at 1-2 (emphasis added)).

Notably, four of Plaintiff's five causes of action are based on alleged violations of the NYSHRL and the NYCHRL, which are specifically cited in the arbitration clause.  The clause states that the grievance and arbitration procedure is the "sole and

12

exclusive remedy for violations" for such claims. (Id.)  The language of the CBA thus "clearly and unmistakably [requires Plaintiff] to arbitrate the . . . claims at issue." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260 (2009).

In Pyett, the Supreme Court upheld a CBA provision between an employer and the Union because the virtually identical arbitration clause "clearly and unmistakably require[d] respondents to arbitrate the age-discrimination claims at issue . . . ." 556 U.S. at 260.  Courts in this Circuit have since held that other federal and state discrimination claims may also be arbitrated pursuant to collective bargaining agreements. See, e.g., Johnson v. Tishman Speyer Props., L.P., No. 09 Civ. 1959, 2009 U.S. Dist. LEXIS 96464 (S.D.N.Y. October 16, 2009)(holding that, pursuant to the CBA between the plaintiff's former employer and the Union, the plaintiff's discrimination claims arising under NYSHRL and NYCHRL are subject to arbitration); Borrero v. Ruppert Hous. Co., No. 08 Civ. 5869, 2009 U.S. Dist. LEXIS 52174 (S.D.N.Y. June 19, 2009)(holding that, in accordance with the CBA between the plaintiff's former employer and the Union, plaintiff's race discrimination claims arising under Title VII are subject to arbitration).

Mr. Okuma contends that it would be unjust to compel arbitration, because enforcement would effectively waive his

statutory rights. (Pl.'s Opp'n. Mot. Law at 7-8.)  However, the Pyett Court considered and rejected this argument, choosing instead to enforce a virtually identical arbitration clause, because of the strong public interest in enforcing collective bargaining agreements. Pyett, 556 U.S. at 271 ("It was Congress' verdict that the benefits of organized labor outweigh the sacrifice of individual liberty that this system necessarily demands.").  Nor would Plaintiff's rights be waived, as the CBA provides for the vindication of the statutory claims at issue here through arbitration, instructing "[a]rbitrators [to] apply appropriate law in rendering decisions based upon claims of discrimination." (Munsky Decl., Ex. A, Art. 1.)

Plaintiff also argues that the Union's failure to file a grievance voids mandatory arbitration and allows Plaintiff to pursue relief in a judicial forum. (Pl.'s Opp'n. Mem. Law at 4-5, 8-9.)  In support, Okuma claims that he attempted to contact his Union representative after he was terminated, but the Union representative was "unavailable due to medical leave."[2] (Pl.'s Opp'n. Mem. Law at 6.)  Even construing facts in the light most favorable to the non-moving party, Plaintiff would not prevail. Mr. Okuma provides no evidence or support for his assertions that

---

[2] Notably, Plaintiff makes this allegation for the first and only time in his Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration. Okuma, however, provides no admissible evidence to support his claim that he contacted the Union.

14

Union had refused to file a grievance, or that it had even been aware of the dispute between Plaintiff and Defendants.

Moreover, even assuming that the Union had refused to file a grievance on Plaintiff's behalf, the Union's refusal would not preclude arbitration. Article 18 of the CBA indicates that, "[s]hould any dispute arise concerning the application or breach of any term or condition of this Agreement, such grievance <u>may</u> be reviewed by a delegate of the Union with the immediate supervisor or some higher ranking supervisor of the Company having authority in the matter . . . ." (Munsky Decl., Ex. A, Art. 18)(emphasis added.) The Article is silent as to how an employee initiates arbitration, and it does not specify procedures should the Union fail to file a grievance on the employee's behalf. Nor does it foreclose the possibility that an employee may proceed with arbitration without Union participation. Accordingly, the Court finds that the CBA does not prevent Plaintiff from vindicating his statutory rights — whether with or without the participation of the Union — through mandatory arbitration.

Finally, Plaintiff's fifth cause of action, which alleges that Defendants violated New York labor law, is also arbitrable under the CBA. As discussed above, (<u>see</u> <u>supra</u> at Sec. II.B), because the claim stems from the CBA, which defines Plaintiff's rights to sick leave, dismissal, severance pay, and vacation

15

time, resolving the claim requires interpretation of the CBA. (Munsky Decl., Ex. A, Art. 1, 3-4, 10, 14.)  Nothing in New York Labor Law § 198(1-a), the provision cited by Plaintiff in his Complaint, indicates that the state legislature intended to preclude compulsory arbitration of claims under that provision. See Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 334 (S.D.N.Y. 2003) (compelling arbitration of claims asserted under New York labor law).  Given the CBA's broadly worded arbitration clause, Plaintiff's fifth claim is subject to the grievance and arbitration procedures described in the CBA.  On the record presented, then, the CBA's waiver of the judicial forum must be enforced, and the Motion to Compel Arbitration must be, and hereby is, GRANTED.

   E.  Dismissal of an Action

   "A district court may dismiss a suit where 'all of plaintiff's claims . . . are subject to arbitration.'" Orman v. Citigroup, Inc., No. 11 Civ. 7086, 2012 U.S. Dist. LEXIS 131532, *10 (S.D.N.Y. September 12, 2012)(citing Drakeford v. Washington Mut., No. 07 Civ. 3489, 2008 U.S. Dist. LEXIS 53224, *4 (S.D.N.Y. July 11, 2008)); see also Sherr v. Dell, Inc., No. 05 Civ. 10097, 2006 U.S. Dist. LEXIS 51864, *2 (S.D.N.Y. July 27, 2006) (dismissing case where all claims were within the scope of a valid arbitration agreement, even though defendant moved only to

stay proceedings and compel arbitration); Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (explaining that dismissal is appropriate when "no useful purpose will be served by granting a stay").

Here, because all of Plaintiff's causes of action must be arbitrated, granting a stay would serve no useful purpose. Dismissal of this action without prejudice is therefore warranted.

III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand to state court is DENIED, Defendants' Motion to Compel Arbitration is GRANTED, and the Complaint is DISMISSED without prejudice in its entirety. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.

Dated: New York, New York
September 29, 2014

_Deborah A. Batts_
Deborah A. Batts
United States District Judge